UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MISTY LEWIS,<br><br>    Plaintiff,<br> v.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP.,<br><br>    Defendant. | Civil Action No.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Misty Lewis ("Plaintiff" or "Ms. Lewis") by and through her counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as being convicted of a misdemeanor for driving while intoxicated (second offense).

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of a misdemeanor for driving while intoxicated ("DWI") (second offense). Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with or convicted of driving while intoxicated (or otherwise under the influence) in her life.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor conviction, which does not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Harris County, Texas regarding the misdemeanor conviction prior to publishing Plaintiff's report to her prospective employer.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal record belongs to a different consumer who is wholly distinguishable from Plaintiff by their first name, race, eye color, date of birth, driver's license number, and Social Security Number.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal record that does not belong to her** – was inaccurate and delete the disputed information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Misty Lewis ("Plaintiff" or "Ms. Lewis") is a natural person residing in San Antonio, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage") is a Florida corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at Concourse Parkway NE, Suite 200, Atlanta, GA 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**STATUTORY BACKGROUND**

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the

confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor conviction that belongs to an unrelated consumer who has a different first name, date of birth, driver's license number, and Social Security Number than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Foundever

40. In or around early August 2023, Plaintiff applied for full-time employment as a licensed insurance agent with Foundever.

41. On or about September 11, 2023, Plaintiff successfully completed an interview.

42. On or about September 12, 2023, Foundever extended a job offer to Plaintiff for the position to which she applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report") and drug test.

43. Foundever informed Plaintiff that her start date, pending the outcome of the background check report and drug test, would be October 2, 2023.

44. Thereafter, Plaintiff took and passed the drug test and awaited the results of her background check.

**Defendant Published an Inaccurate Background Check Report to Foundever**

45. Foundever contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

46. On or about September 12, 2023, Foundever ordered a criminal background check on Plaintiff from Defendant.

47. On or about September 19, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Foundever.

48. Within that employment report, Defendant published inaccurate information about Plaintiff.

49. Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing misdemeanor DWI conviction (second offense), Case No. 128385401010-2, from Harris County, Texas, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 128385401010 - 2 |
| Case Date | 04/Feb/2005 |
| Name on File | MISTY DAWN LEWIS |
| DoB on File | XX/XX/XXXX |
| Charge | DRIVING WHILE INTOXICATED 2ND OFFENDER BLOOD ALCOHOLIC CONTENT |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 29/Mar/2005 |
| Sentence | JAIL 30 DAYS; CREDIT TIME SERVED 2 DAY |

50. The criminal conviction reported by Defendant about Plaintiff to Foundever *does not* belong to Plaintiff.

51. Plaintiff has never been charged with or convicted of driving while intoxicated (or otherwise under the influence) in her life.

52. Furthermore, at the time Case No. 128385401010-2 was filed, Plaintiff was a minor and her last name was "Young."

53. A cursory review of the widely available underlying public court records confirms that the record belongs to an unrelated female, **Misti** Dawn Lewis ("DWI Lewis").

54. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the conviction, it would have seen obvious discrepancies between DWI Lewis and Plaintiff.

55. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as DWI Lewis include the following:

> (a) Plaintiff's legal name is "**Misty** Dawn Lewis" and the criminal record belong to a "**Misti** Dawn Lewis," which is both clearly indicated on the face of the employment report and in the widely available public records from Harris County, Texas;

9

  (b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, indicates she was born in May 1988, yet the underlying public court records indicate that DWI Lewis was born in February 1978;

  (c) Plaintiff's driver's license number is entirely different from the driver's license number associated with Case No. 128385401010-2;

  (d) Plaintiff and DWI Lewis have different colored eyes and are of different races; and

  (e) Plaintiff's Social Security number, which was provided to Defendant and is contained on the face of the subject employment report is entirely different than that of DWI Lewis.

56. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

57. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belongs to an unrelated individual with a different first name than Plaintiff, a different date of birth, a different driver's license number, and a different Social Security Number than Plaintiff.

58. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Foundever Delays Plaintiff's Start Date**

59. On or about September 19, 2023, Plaintiff was notified by Foundever that her start date was delayed as a direct result of the misdemeanor DWI conviction reported by Defendant.

60. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction of another, namely DWI Lewis, was published in the employment report Defendant sold about Plaintiff to Foundever.

61. Plaintiff contacted Foundever and informed them that she is not DWI Lewis. Plaintiff explained that the serious criminal conviction of DWI Lewis does not belong to her.

62. Plaintiff was very panicked, confused, and concerned about the impact of DWI Lewis' serious criminal conviction reported on the subject employment report – specifically, the impact of the same on her future.

63. Specifically, Defendant matched Plaintiff and DWI Lewis and published the criminal record of DWI Lewis onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Foundever, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

64. On September 19, 2023, desperate to secure employment as a *licensed* insurance agent with Foundever and riddled with worry over the far-reaching impacts of being confused with a criminal, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

65. Plaintiff identified herself and provided information to Defendant to support her dispute.

11

66. Plaintiff specifically disputed DWI Lewis' criminal record.

67. Plaintiff specifically stated that DWI Lewis' criminal record does not belong to Plaintiff.

68. Plaintiff specifically asked Defendant to investigate and delete DWI Lewis' criminal record from any employment report about Plaintiff.

### Foundever Denies Plaintiff's Job Application

69. On or about September 29, 2023, Plaintiff received an email from Foundever requesting court documents for the misdemeanor DWI conviction that showed up on her report.

70. Plaintiff once again explained that the case does not belong to her, so she did not have any documents to submit.

71. On October 2, 2023, Foundever responded that without the court records, they would be unable to move forward with her hiring process for a *licensed* insurance agent.

72. As an alternative, Foundever offered Plaintiff a position that did *not* require a license. However, the role came with a significant pay decrease which would not have afforded Plaintiff enough income to support herself or her two children. Accordingly, Plaintiff declined the unlicensed position and decided to wait for a response to her dispute.

73. Plaintiff also began looking for alternative employment.

74. On October 13, 2022, Plaintiff forwarded court documents pertaining to DWI Lewis' criminal case to Foundever in hopes of proving the DWI conviction does not belong to Plaintiff.

75. On October 16, 2022. Foundever informed Plaintiff that the court documents Plaintiff provided were insufficient as they would need to be *certified* copies.

76. As of the filing of this Complaint, Foundever still has not reinstated its offer of employment to Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

77. As of October 20, 2023, more than thirty (30) days have passed since Plaintiff's dispute.

78. As of October 20, 2023, Plaintiff still has not received a dispute response from Defendant.

79. Defendant failed to issue a corrected employment report to Foundever.

80. Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's September 2023 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

81. Because Defendant failed to issue a corrected employment report, Foundever did not reinstate its job offer for the *licensed* insurance agent position to Plaintiff.

82. But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

83. Defendant's false report cost Plaintiff a promising, well-paying job with Foundever.

84. The position with Foundever was full-time and Plaintiff was set to earn $15.00 per hour for the first 12 weeks and $17.00 per hour after the first 12 weeks, with a competitive benefits package (including health insurance and paid time off). More importantly, Plaintiff was excited to work as a licensed insurance agent because she believed she would do well at the job and was

passionate about the field. Plaintiff was also eager to earn her license as an insurance agent, which Foundever would have paid for.

85. Due to Defendant's unreasonable procedures and failure to reinvestigate Plaintiff's dispute, Plaintiff was unable to work as a *licensed* insurance agent with Foundever.

86. Eventually, Plaintiff was able to secure alternative employment. However, the position she secured was less desirable as it was not in the field she wanted to work, was not full-time, paid less per hour, and did not offer health insurance or paid time off.

87. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

89. Defendant's conduct also caused Plaintiff to fear that the inaccurate reporting would never be resolved, or would appear on other background checks. Accordingly, when searching for alternative employment, Plaintiff made sure to ask which background check company the employer used.

90. Defendant's conduct caused Plaintiff financial insecurity and to fear that she would be unable to support her family. Plaintiff is a widow and single mother to two children (ages eight and ten).

91. Similarly, Defendant's conduct caused Plaintiff to fall behind on her bills and forced her to take out a loan in order to pay her rent.

92. Plaintiff was also unable to afford to take her children to SeaWorld for their Howl-O-Scream Halloween event.

### CLAIMS FOR RELIEF
#### COUNT I
#### 15 U.S.C. § 1681e(b)
#### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

93. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

94. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

95. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

96. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

97. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

98. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; the expenditure of labor and effort disputing and

trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

99. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering tit liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

101. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

102. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

103. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

104. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that she was convicted of a misdemeanor DWI.

105. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

106. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

107. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

108. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in

an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

109. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 30, 2023.

/s/ McKenzie Czabaj
McKenzie Czabaj, AZ No. 036711
David A. Chami, AZ No. 027585
**Consumer Attorneys**
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2376
Email: mczabaj@consumerattorneys.com

*Attorneys for Plaintiff*
*Misty Lewis*